## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jamal G. Hassuneh and
Lindsey Hassuneh,

               Plaintiffs,

v.

City of Minneapolis, Officer Matthew
Lindquist, Officer Daniel S. Anderson,
and Asst. Chief Timothy Dolan,

               Defendants.

Civil No. 06-3143 (DWF/AJB)

**MEMORANDUM
OPINION AND ORDER**

---

Kenneth R. White, Esq., White Law Office; and Michael B. Padden, Esq., Padden &
Associates, PLLC, counsel for Plaintiffs.

Darla Jo Boggs, Assistant Minneapolis City Attorney, and Timothy S. Skarda, Assistant
Minneapolis City Attorney, Minneapolis City Attorney's Office, counsel for Defendants
City of Minneapolis, Officer Matthew Lindquist, Officer Daniel S. Anderson, and Asst.
Chief Timothy Dolan.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by

Defendants City of Minneapolis, Officer Matthew Lindquist, Officer Daniel S. Anderson,

and Assistant Chief Timothy Dolan.  In their Complaint, Plaintiffs Jamal G. Hassuneh

and Lindsey Hassuneh assert several causes of action relating to the conduct of

Defendant Officers Anderson and Lindquist after the officers responded to a traffic

accident involving Eddie Jamal Griffin on March 30, 2006.  Specifically, the Hassunehs

assert the following causes of action:  (1) a violation of the officers' duty to investigate

criminal conduct brought pursuant to 42 U.S.C. § 1983; (2) a failure to hire, train, and supervise claim against the City of Minneapolis brought pursuant to 42 U.S.C. § 1983; and (3) state claims against each individual Defendant for negligence (zone of danger) and negligence related to Griffin's inattentive driving.  For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

## BACKGROUND

On March 30, 2006, at approximately 2:20 a.m., Eddie Jamal Griffin, who was at the time a basketball player for the Minnesota Timberwolves,[1] crashed his Cadillac Escalade into Plaintiffs' Chevy Suburban, which was parked in front of the Santana Foods store[2] located at 601 University Avenue Southeast in Minneapolis.  (Aff. of Timothy S. Skarda ("Skarda Aff.") ¶¶ 2, 3, Exs. A & B.)  The Suburban was unoccupied. When the collision occurred, Jamal Hassuneh was exiting his apartment and walking toward his vehicle.  (*Id*. at ¶ 6, Ex. E (Dep. of Jamal G. Hassuneh ("J. Hassuneh Dep.") at 19); Ex. F (Declaration of Plaintiff Jamal Hassuneh ("J. Hassuneh Decl.") ¶ 4).)  Jamal Hassuneh watched as Griffin's Escalade struck the Suburban.  The force of the impact pushed the Suburban up onto a sidewalk and into a tree.  (J. Hassuneh Decl. ¶ 6.)  Jamal Hassuneh was not physically struck by the cars or by any other physical object as a result of the accident.  Later, both Jamal Hassuneh and Griffin refused medical attention at the scene.  (Skarda Aff. Ex. A.)

---

[1]     Griffin was killed in a car-train accident in August 2007.

[2]     Jamal Hassuneh is the operator of Santana Foods and he lives in an apartment above the store.

Just after the accident occurred, Griffin spoke with Abed Hassuneh, Jamal Hassuneh's brother.  According to Abed Hassuneh, Griffin told him that the reason that he crashed was that he was drunk, watching a pornographic DVD on the in-dash player, and "jacking off" (*i.e.*, masturbating).  (Aff. of Abed Hassuneh ("A. Hassuneh Aff.) ¶ 1, Ex. 4 at 4-5.)  Abed Hassuneh contends that when he was standing a few inches from Griffin, Abed Hassuneh could smell alcohol on Griffin.  (*Id*. at 8.)  Griffen then entered Santana Foods and spoke with Jamal Hassuneh.  Some of Griffin's conduct and statements were recorded on the store's surveillance videotape.[3]  Jamal Hassuneh stated that Griffin admitted repeatedly that he was drunk and asked Jamal Hassuneh not to call the police.  (J. Hassuneh Dep. at 24.)

A number of calls were made to 911 requesting, cancelling, and re-requesting police assistance.  (Skarda Aff. ¶ 5, Ex. D (Dep. of Daniel Anderson ("Anderson Dep.") at 22); J. Hassuneh Dep. at 24.)  It appears that at least one of the callers told a 911 dispatcher that Griffin was "drunk." (Pls.' Mem. of Law in Opp. to Defs.' Mot. for Summ. J. Ex. 7 at 4, 6.)  The transcript of the communication between 911 dispatch and the officers indicated "POSS INTOX" of the vehicle's driver.  (*Id*. at Ex. 15.)

Officers Anderson and Lindquist arrived at the scene shortly after 3:00 a.m. Officer Lindquist observed that the Cadillac Escalade's front end had heavy damage and the front air bags had deployed.  (Skarda Aff. ¶ 8, Ex. G (Dep. of Matthew Lindquist ("Lindquist Dep.") at 28.) Officer Anderson observed that Griffin's vehicle had a DVD

---

[3]     Undisputedly, the officers were not privy to Griffin's conversation inside Santana Foods.  Moreover, the officers did not have access to the store's surveillance videotape at the time of the incident.

player mounted in the dash and that the DVD player was playing a pornographic video. (Anderson Dep. at 57-58.)

The officers remained at the scene of the accident for approximately 30 minutes, during which time they interviewed Jamal Hassuneh, Griffin, and other witnesses.  The officers ultimately charged Griffin with driving without a license and inattentive driving. (Skarda Aff. Ex. A.)  Afterward, the officers escorted Griffin to their squad car and drove him to his home in St. Paul.  (Lindquist Dep. at 13; Anderson Dep. at 58-59, 61.)  Abed Hassuneh testified that as the officers were escorting Griffin to the squad car, he heard Griffin say, "Please.  I'll pay you anything.  10, 20.  Whatever.  Don't take me to jail.  I'll lose everything.  Just take me home.  I'll take care of you guys.  I have money in a safe." (A. Hassuneh Aff. ¶ 4.)  Abed Hassuneh interpreted this to mean that Griffin was offering the police officers a bribe of $10,000 or $20,000 in order to avoid being arrested.  (*Id*. at 5.)  The police officers deny that they were offered a bribe.

After the incident, the officers filed an accident report that described the events of the accident, and a police report that indicated that Griffin had been charged with driving without a license and inattentive driving.  (Skarda Aff. Ex. A & B.)  In their depositions, both officers stated that they did not feel it was necessary to conduct an alcohol assessment because, other than a slight bit of alcohol on his breath, Griffin did not demonstrate characteristics indicating that he was under the influence of alcohol. (Anderson Dep. 19-20, 39; Lindquist Dep. 16-17, 31-32.)  The officers admitted in their depositions that Griffin told them at the accident scene that he was watching a pornographic movie and masturbating while driving.  (Anderson Dep. 48-49; Lindquist

4

Dep. 16, 24.)  This information, however, was not included in the police report.  The officers also stated in their depositions that Griffin's vehicle was inoperable and he had no means of getting a taxi because he had no cash or credit cards and his cell phone was dead.  (Lindquist Dep. 13; Anderson Dep. 58-59, 61.)  The officers explained that because of the late hour, the cold temperature, and because Griffin's only way of getting home was walking, they gave him a ride home.  (*Id.*)

Plaintiffs initially brought this Complaint in Ramsey County District Court and it was removed here.  Plaintiffs subsequently reached a settlement of all claims against Griffin and the Court dismissed those claims with prejudice, pursuant to the settlement.  (*See* Doc. Nos. 31, 32.)  Plaintiff Jamal Hassuneh now requests compensatory damages for the alleged civil rights violations pursuant to 42 U.S.C. § 1983, as well as damages related to his negligence and zone of danger claims.  Plaintiff Lindsay Hassuneh asserts that as a direct result of the harm to her husband, she has suffered loss of consortium damages.  The Hassunehs also seek attorney fees pursuant to 42 U.S.C. § 1988.

## DISCUSSION

## I.      Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).

## II.   Section 1983 Claims Against the Defendant Officers

Section 1983 prohibits a person acting under color of state law from depriving another person of his or her "rights, privileges, or immunities secured by the Constitution and laws. . . ." 42 U.S.C. § 1983. When bringing a § 1983 claim, a plaintiff must establish (1) a deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982).

Here, Defendants assert that they are entitled to qualified immunity on Plaintiffs' § 1983 claims. Qualified immunity shields government officials as well as private individuals from civil liability under § 1983. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). A defendant is shielded from civil liability if it is shown that his or her conduct "does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law to be decided by the district court.  *Littrell v. Franklin*, 388 F.3d 578, 584 (8th Cir. 2004).

On a motion for summary judgment, the Court employs a three-part test to determine whether qualified immunity exists.  *Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999).  First, the plaintiff must assert a violation of a constitutional right.  *Id.* Second, the alleged right must be clearly established.  *Id.*  Third, taking the facts in the light most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated the plaintiff's clearly established rights.  *Id.*  If the Court determines that the facts, viewed in the light most favorable to the injured party, do not establish a violation of a constitutional right, no further inquiry is necessary.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'"  *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Defendants assert that Plaintiffs fail to state a violation of a constitutional right, Plaintiffs have not been denied access to the courts, the law was not clearly established, and the Defendant officers acted reasonably.  Plaintiffs, on the other hand, contend that their right to the opportunity to proceed against Griffin in a subsequent civil action was impaired significantly by the actions of the Defendant officers, the constitutional right is well established, and the officers acted with deliberate indifference to Plaintiffs' rights.

Plaintiffs contend that they have alleged a violation of a constitutional right because their opportunity to proceed against Griffin in a subsequent civil action was significantly impaired by the actions of the Defendant police officers.  Specifically, Plaintiffs contend that because the Defendant officers did not conduct field sobriety tests, Plaintiffs will have a more difficult time proving that Griffin was intoxicated at the time of the accident. They argue that a jury award will be less than it otherwise would have been if Plaintiffs had substantive evidence such as a valid blood alcohol result.

In support of this contention, Plaintiffs point to *Scheeler v. City of St. Cloud*, 402 F.3d 826, 831 (8th Cir. 2005).  In that case, the Scheelers brought a § 1983 claim against police officers after a police investigation concluded that the Scheelers' son had died of an accidental, self-inflicted gunshot wound to the head.  The Scheelers, who believed that their son was a victim of homicide, contended that the police had denied them meaningful access to the courts by failing to properly investigate their son's death. *Id*. at 829.  The Scheelers asserted that this interfered with their exercise of a constitutionally protected right to bring a wrongful death action against their son's purported killer.  *Id*.  The Eighth Circuit rejected these contentions, noting that in order to prevail on such a claim under a due process analysis, the Scheelers must demonstrate that the defendants "displayed a deliberate indifference to their right to access the courts through their investigation into [the son's] death." *Id.* at 831.  The court found that the police conducted a thorough investigation at the scene, after which the police ultimately concluded that the Scheelers' son died by shooting himself.  *Id*.  The court rejected the Scheelers' assertions that the polices failure to perform an autopsy or test blood spatters

8

on their son's hands resulted in deliberate indifference.  *Id*. at 832.  The court noted that even "alleged violations of state laws, state-agency regulations, and even state court orders do not by themselves state a claim under 42 U.S.C. § 1983."  *Id*. (citations omitted).

Here, the Court finds no merit to Plaintiffs' assertions that Defendants displayed a deliberate indifference to their right to access the courts.  As a preliminary matter, the Court finds it perplexing that Plaintiffs would argue that their right to access to the courts was restricted when they brought their suit against Griffin in this very court.  More importantly, Plaintiffs' claims against Griffin were resolved by an agreeable settlement. Even if Plaintiffs had a plausible claim of a constitutional violation for a restriction on the right to bring a lawsuit, which they do not, it is nearly impossible to determine how a jury would resolve the measure of damages in such a lawsuit.  This is not a case where the police officers' failure to investigate resulted in the damage to Plaintiffs.  It is pure speculation that a now non-existent lawsuit would be resolved with a greater monetary result if the police had tested Griffin's blood-alcohol level.

Even assuming that all of the facts as alleged by Plaintiffs are true, including Plaintiffs' allegations of a bribe, Plaintiffs have not been denied access to the courts. Plaintiffs have not established any violation of a constitutional right.  As a result, no further inquiry is required and the Defendant officers are entitled to qualified immunity on Plaintiffs' § 1983 claim.

### III.    Failure to Train

For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  An "[o]fficial policy involves a deliberate choice to follow a course of action . . . made from among various alternatives [] by an official who is determined by state law to have the final authority to establish governmental policy."  *Ware v. Jackson County, Mo.*, 150 F. 3d 873, 880 (8th Cir. 1998) (quotations and brackets omitted).  Alternatively, a custom is "demonstrated by (1) [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) [t]he plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation."  *Id*. (brackets omitted).

Plaintiffs contend that the City failed to create a reasonable policy for investigating motor vehicle accidents such as this.  Plaintiffs primarily base their allegations on the fact that the City changed its policy on investigating accidents after this accident occurred, now requiring alcohol testing.

Plaintiffs' *Monell* claim fails in the first instance because Plaintiffs have not established that the officers' failure to administer an alcohol assessment at the scene of a traffic accident resulted in a constitutional violation.  *See Schulz v. Long*, 44 F.3d 643, 650 (8th Cir. 1995) ("It is the law in this circuit . . . that a municipality may not be held

liable on a failure to train theory unless an underlying Constitutional violation is

located.").  Moreover, even viewing the evidence in the light most favorable to the

Plaintiffs, the Court finds that Plaintiffs have failed to identify a genuine issue of material

fact to support their *Monell* claim.  On the record before the Court, there is no evidence to

support Plaintiffs' assertion that the City has a widespread custom or policy or lack of

training or supervision regarding administering alcohol assessments at the scene of a

traffic accident prior to the event in question.  Plaintiffs do not provide any evidence that

the City of Minneapolis was on notice of the alleged constitutional violation and that the

City was deliberately indifferent or authorized the alleged constitutional violation.  The

Court grants Defendants' motion for summary judgment as to this claim.

## IV.   Negligence Claims

Plaintiffs' remaining claims against the Defendant officers sound in negligence.

Plaintiffs seek "zone of danger" damages for Plaintiff Jamal Hassuneh and

loss-of-consortium, pain and suffering, and emotional distress damages for Plaintiff

Lindsey Hassuneh.

Under Minnesota law, public officials are automatically entitled to official

immunity from state-law claims when their duties require the exercise of discretion, so

long as the officer is not guilty of a willful or malicious wrong.  *Johnson v. Morris*, 453

N.W.2d 31, 41-42 (Minn. 1990); *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn.

1988).  Thus, to determine whether official immunity is available in any given context

requires a determination of whether the alleged acts were discretionary or ministerial and

whether the alleged acts were malicious or willful. *Davis v. County of Hennepin*, 559 N.W.2d 117, 122 (Minn. Ct. App. 1997).

Malice, in the official immunity context, means intentionally committing an act that the official has reason to believe is prohibited. This is an objective inquiry that examines the legal reasonableness of an official's actions. *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994). To overcome a defense based on official immunity, a plaintiff cannot rely on "bare allegations of malice"; rather, a plaintiff must present specific facts evidencing bad faith. *Harlow v. Fitzgerald,* 457 U.S. 800, 817 (1982).

Here, the Court finds that Plaintiffs have failed to set forth a genuine issue of material fact in regard to their negligence claims. First, any negligence claim that may have once existed stems from the actions of Griffin, not from the actions of the officers. Plaintiffs have failed to establish the elements of a negligence claim related to the officers' actions. Moreover, even if Plaintiffs could establish the elements of a negligence claim, Plaintiffs have failed to establish that the officers acted willfully or maliciously. Thus, official immunity would apply to absolve the officers of liability. Defendants' motion for summary judgment is granted on Plaintiffs' state law claims.

Thus, **IT IS HEREBY ORDERED** that:

1.     The Motion for Summary Judgment brought by Defendants City of Minneapolis, Officer Matthew Lindquist, Officer Daniel S. Anderson, and Assistant Chief Timothy Dolan (Doc. No. 42) is **GRANTED**.

2.      The Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  May 28, 2008                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        Judge of United States District Court